**In re STUDENT FINANCE CORPORATION, Debtor.**

**Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corp., Plaintiff,**

v.

**SWH Funding Corp., Defendant.**

Bankruptcy No. 02–11620 (KJC).

Adversary No. 04–65478 (KJC).

United States Bankruptcy Court, D. Delaware.

Dec. 21, 2007.

Allison M. Berger, Hal L. Baume, Teresa M. Dorr, Fox Rothschild LLP, Lawrenceville, NJ, Anthony M. Saccullo, Daniel K. Astin, L. Jason Cornell, Sheldon K. Rennie, Fox Rothschild LLP, Charlene D. Davis, Mary E. Augustine, Ashley B. Stitzer, Kathryn D. Sallie, The Bayard Firm,

Christopher A. Ward, Wilmington, DE, Dawn N. Zubrick, Dilworth Paxson LLP, Deirdre M. Richards, Obermayer Rebmann Maxwell & Hippel LLP, Philadelphia, PA, for Debtor/Plaintiff.

Stephen M. Miller, Carl N. Kunz, Thomas M. Horan, Morris James LLP, Wilmington, DE, for SWH Funding Corp.

### MEMORANDUM [1]

KEVIN J. CAREY, Bankruptcy Judge.

On June 5, 2002, several creditors of Student Finance Corporation (the "Debtor") filed an involuntary chapter 7 bankruptcy petition. On November 4, 2002, the Debtor consented to the entry of an order for relief under chapter 7 (the "Order for Chapter 7 Relief") and converted its case to one under chapter 11 of the Bankruptcy Code. On September 29, 2003, Charles A. Stanziale, Jr., Esquire was appointed the chapter 11 trustee. The case was eventually reconverted to a chapter 7 liquidation on November 14, 2003. Mr. Stanziale was appointed the chapter 7 trustee (the "Trustee").

On November 2, 2004, the Trustee filed a complaint commencing this adversary proceeding against SWH Funding Corporation (the "Defendant" or "SWH") under §§ 548 and 544 of the Bankruptcy Code, and Delaware and Pennsylvania state law, to avoid and recover certain allegedly fraudulent transfers made by the Debtor to SWH. On January 14, 2005, SWH filed its answer to the complaint. The parties conducted discovery and participated in mediation, which was ultimately unsuccessful. On April 21, 2006, SWH filed its Motion to Dismiss, or in the Alternative, for Summary Judgment (docket no. 41) (the "SWH Motion").[2] The Trustee filed a brief opposing the SWH Motion (the "Trustee's Response") (docket no. 44) and SWH filed a reply brief in support of the SWH Motion (docket no. 45). The Court heard argument relating to the SWH Motion on January 9, 2007.

On April 27, 2007, the Trustee filed a motion for leave to supplement his brief in opposition to the SWH Motion (the "Trustee's Motion to Supplement")(docket no.

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and it is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(H).

2. The SWH Motion seeks dismissal of the Complaint for failure to plead the circumstances constituting fraud with particularity, as required by Federal Rule of Civil Procedure 9(b), made applicable hereto pursuant to Fed.R.Bankr.P. 7009. The SWH Motion was filed after SWH filed its answer and after the parties completed discovery. The purpose of Rule 9(b)'s requirement is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges or immoral and fraudulent behavior." *Seville Ind'l Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984). While some courts have allowed "greater liberality" to trustees pleading fraud in a bankruptcy context, a complaint that simply alleges the statutory elements of a constructive fraud action under section 548 has been held insufficient to meet the pleading requirements of Rule 9(b). *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 717–18 (Bankr.D.Del. 2005). However, leave to amend the complaint may be granted under Bankruptcy Rule 7015(a), unless there is a showing of "undue delay, bad faith, a dilatory motive, prejudice or futility." *Id.* quoting *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr.D.Del.2003). Here, the parties have completed discovery and are aware of the facts surrounding the Transfers that form the basis for the allegations of fraud. To require the Trustee to amend the Complaint at this time would only serve to further delay this matter. In the interests of judicial economy, SWH's motion to dismiss will be denied and the summary judgment request in the SWH Motion will be discussed *infra*.

61). SWH filed a response objecting to the relief in the Trustee's Motion to Supplement (docket no. 64) and the Trustee filed a reply brief in support of his motion (docket no. 66). Oral argument on the Trustee's Motion to Supplement was heard on July 18, 2007. On July 30, 2007, an Order was entered denying the Trustee's Motion to Supplement (docket no. 76). The SWH Motion is now ripe for consideration. For the reasons set forth below, the SWH Motion will be denied.

### LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c), made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). After sufficient proof has been presented to support the motion, the burden shifts to the non-moving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The non-moving party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). "[W]here the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Telephone Company*, 24 F.3d 508, 512 (3d Cir.1994).

### FACTS

SWH asserts that the following facts are undisputed.

The Debtor's business consisted of originating and acquiring non-guaranteed student loans and tuition installment agreements primarily from truck-driving schools. SWH is a private commercial lending company which had an ongoing lending relationship with the Debtor beginning in January 2000. In December 2001, the Debtor sought short-term financing from SWH in the amount of $80 million dollars. On December 19, 2001, SWH sent an "expression of interest" letter (the "December 2001 Letter") to the Debtor regarding the loan request. (*See* Ex. G to the SWH Motion). The December 2001 Letter required payment of an application fee of $400,000, that would be earned upon execution of the commitment letter. The Debtor signed the December 2001 Letter and paid the $400,000 application fee by wire transfer on December 20, 2001. SWH then commenced due diligence with regard to the proposed loan transaction.

In January 2002, the Debtor advised SWH that it no longer wished to borrow the $80 million dollars. Pursuant to the December 2001 Letter, the Debtor owed SWH a break-up fee of 2% or $1.6 million dollars to be paid in full on February 15, 2002.

In February 2002, the Debtor renewed its request to borrow $80 million dollars from SWH. On February 6, 2002, SWH issued a second "expression of interest" letter (the "February 2002 Letter") with terms similar to the December 2001 Letter, except that it did not require an application fee and it reduced the break-up fee from the failed December transaction to $1.2 million dollars. (*See* Exhibit H to the SWH Motion). The Debtor signed a copy of the February 2002 Letter accepting those terms. Thereafter, SWH continued to its due diligence.

On March 4, 2002, the Debtor paid $250,000 to SWH. SWH claims that the March 4, 2002 payment was for due diligence expenses that the Debtor was required to pay pursuant to the terms of the February 2002 Letter.

By letter dated March 12, 2002, SWH informed the Debtor that SWH was not willing to proceed with the loan because the Debtor had failed to satisfy each of the fourteen "Conditions Precedent to Funding" that were set forth in the February 2002 Letter. (*See* Exhibit K to the SWH Motion).

### DISCUSSION

In the Complaint, the Trustee seeks to avoid the $400,000 payment made by the Debtor to SWH in December 2001 and the $250,000 payment made by the Debtor to SWH in March 2002 (together, known as the "Transfers") as fraudulent transfers based upon Bankruptcy Code sections 548 and 544 (11 U.S.C. §§ 548 and 544), and applicable state laws (Del.Code Ann. tit. 6, § 1304 and 12 Pa.C.S.A. § 5104).[3] To prevail, the Trustee must prove that the Debtor made the Transfers with actual intent to defraud, hinder or delay creditors (11 U.S.C. § 548(a)(1)(A)) ("Actual Fraud"). Alternatively, the Trustee must prove that the Debtor received less than "reasonably equivalent value" for the Transfers and that the Transfers were made while the Debtor (i) was insolvent, (ii) was engaged in a business for which it had unreasonably small capital, or (iii) intended to incur debts beyond its ability to pay (11 U.S.C. § 548(a)(1)(B)) ("Constructive Fraud").[4]

---

3. Although the Complaint contains state law fraudulent transfer claims, SWH seeks summary judgment only under Bankruptcy Code § 548.

4. 11 U.S.C. § 548(a)(1) provides part:
   (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
   (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
   (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

   (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
   (II) was engaged in business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
   (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
   11 U.S.C. § 548(a)(1)(2002). Although this section has since been amended, I look to the version in effect on the date the Debtor's bankruptcy case was filed.

■ SWH argues that the facts established by the parties' discovery do not contain any evidence to support the Trustee's claims to avoid the Transfers, under either an Actual Fraud or a Constructive Fraud theory. SWH further argues that, even if the Transfers are avoidable under § 548(a)(1), the undisputed facts show that SWH received the Transfers for value and in good faith and, therefore, § 548(c) allows SWH to retain the Transfers.[5] Accordingly, SWH argues that it is appropriate for this Court to grant summary judgment in its favor.

In response, the Trustee argues that there are issues of material fact which show that the Transfers were made with actual intent to defraud creditors and that the Debtor did not receive reasonably equivalent value in exchange for those Transfers. The Trustee further argues that there are issues of material fact as to whether SWH took the Transfers in good faith.

## A. *Actual Fraud*

SWH argues that the Trustee has not presented any evidence to support a claim to avoid the Transfers based on Actual Fraud. In support of this position, SWH refers to the Trustee's answer to its interrogatory asking for "each and every fact and legal authority upon which you rely for your contention that Debtor made the Defendant Payments with actual intent to (a) hinder creditors; (b) defraud creditors; (c) delay creditors; and identify each such creditor." The Trustee's responded as follows:

[W]ithin one year prior to the Petition Date of June 5, 2002, on December 20, 2001, [the Debtor] caused to be paid $400,000 allegedly for a loan transaction which never materialized. In addition, on March 4, 2002, one day prior to the Statutory Preference Payment period, [the Debtor] paid another $250,000 to SWH for conducting alleged additional due diligence for a loan which never materialized.

*See* Exhibit C to the SWH Motion. SWH argues that this response is merely a "recitation of the allegations with no facts to support it."

The Trustee argues that he may rely on circumstantial evidence to support his allegations of actual fraud, because "[a]ctual intent to defraud, by its nature, is rarely susceptible to direct proof, and, thus, circumstantial evidence must suffice." *VFB, LLC v. Campbell Soup Co.*, 2005 WL 2234606, *31 (D.Del. September 13, 2005). The Trustee relies on the case *OODC, LLC v. Majestic Management, Inc. (In re OODC, LLC)*, 321 B.R. 128 (Bankr.D.Del. 2005) in which the court noted that "certain 'badges of fraud' can form the basis for a finding of actual intent to hinder, delay or defraud," which include the following: (1) a close relationship among the parties to the transaction; (2) a secret and hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (5) the use of dummies or fictitious parties; and (6) retention of control of property by the transferor after the conveyance. *OODC, LLC v. Majestic Man-*

---

5. 11 U.S.C. § 548(c) provides:
(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.
11 U.S.C. § 548(c)(2002).

*agement, Inc. (In re OODC, LLC)*, 321 B.R. 128, 140 (Bankr.D.Del.2005).

In the Complaint, the Trustee alleges that prior to the bankruptcy filing, default rates on the Debtor's student loan accounts began to rise and the Debtor used its own funds to make forbearance payments on behalf of the students in an effort to mask the true default rates. (Complaint, ¶ 10). The Trustee argues that evidence of the Debtor's fraudulent scheme is found in statements made by SWH in its brief and in its state court complaint against the Debtor (*see* Exhibit D to the Trustee's Response) showing that, throughout the period of time in which the Debtor requested the loan from SWH and SWH performed its due diligence, the Debtor affirmatively misrepresented its financial condition to SWH and others, including the Debtor's insurance companies, other lenders, and financial rating agencies. The Trustee also contends that SWH should have known about the Debtor's precarious financial condition due to its lengthy lending relationship with the Debtor. In addition, the Trustee argues that an email exchange between the Debtor's attorney and SWH's President provides evidence that SWH was involved in defrauding creditors. In response to an email from Debtor's counsel asking about the status of the February 2002 loan, SWH's President wrote:

> No joke, you know from the last SFC [the Debtor] deal we have no money. We were just using the old "the documents aren't done" to get out of financing.

*See* Exhibit G to the Trustee's Response (the "February Email").

SWH argues that the evidence presented by the Trustee does not provide a basis for finding any of the "badges of fraud" here, and that the February Email, when read in context with the complete string of emails accompanying it, was a "sarcastic, tongue-in-cheek" response to a request to fund the loan before the paperwork was complete. However, when considering a summary judgment motion, it is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. The conduct in which the Debtor was indisputably engaged during the time of the Transfers and the February Email raise issues of material fact that must be resolved to decide the issue of Actual Fraud. The Trustee's evidence is sufficient to meet this standard. SWH's request for summary judgment on the issue of Actual Fraud will be denied.

**B.   *Constructive Fraud.***

SWH also disputes the Trustee's Constructive Fraud claims, arguing that the Debtor received "reasonably equivalent value" in exchange for the Transfers and that the Trustee has not provided any evidence of the Debtor's insolvency at the time of the Transfers. Again, the Trustee responds by arguing that there are unresolved issues of material fact.

Both sides rely on *Mellon Bank, N.A. v. Official Committee of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139 (3d Cir.1996) to support their positions about whether the Debtor received value in return for the $400,000 loan application fee. The *R.M.L.* case questioned whether a $515,000 commitment fee paid by the debtor to the bank in connection with a contemplated $53 million dollar loan conferred "reasonably equivalent value" upon the debtor. The bankruptcy court had determined that the debtor in *R.M.L.* did not receive "reasonably equivalent value" in return for the fee because "the loan commitment was so conditional when issued that it conferred virtually no

indirect economic benefit on [the debtor]." *R.M.L.*, 92 F.3d at 142. The Third Circuit Court of Appeals decided:

> We ... agree that the mere "opportunity" to receive an economic benefit in the future constitutes "value" under the Code.... [H]owever, fatal to [the bank's] position is the bankruptcy court's record-supported factual finding that the chances of the loan closing were negligible. The court essentially found that [the debtor] was exchanging substantial fees for an extremely remote opportunity to receive value in the future. Because we agree that this minimal "value" was not "reasonably equivalent," to the lending fees [the debtor] remitted to [the bank], we will affirm the bankruptcy court's determination.

*R.M.L.*, 92 F.3d at 148. SWH argues that this case supports its position that the Debtor received reasonably equivalent value in exchange for the Transfers (both the application fee and the due diligence expense reimbursement) because the undisputed facts, including the lending history between the parties, show that SWH was likely to extend the $80 million dollar loan to the Debtor. The Trustee relies upon R.M.L. to support his position that a "reasonably equivalent value" determination is a fact intensive inquiry. He argues that the February Email and the Debtor's fraudulent activities at the time of the loan request raise factual issues that prevent entry of summary judgment.

SWH has submitted copies of earlier loan application letters between SWH and the Debtor showing the parties' previous lending relationship. The December 2001 Letter and February 2002 Letter appear to be consistent with the earlier letters, which resulted in loans to the Debtor. However, I agree with the Trustee that the February Email and the Debtor's activities at the time of the Transfers raise factual issues about the likelihood of receiving the $80 million dollar loan.[6] On the record as it currently exists, I cannot conclude, as a matter of law, that summary judgment with respect to Constructive Fraud is warranted.

## C. *The value/good faith defense.*

■ Finally, SWH also argues that it received the Transfers for value and in good faith. Therefore, under § 548(c), even if the Transfers are voidable under § 548(a)(1)(A) or (B), SWH does not have to return the Transfers to the extent that SWH provided value in exchange for the Transfers. SWH argues that "value" is not an issue here since the Transfers were made in payment of antecedent debts.[7] However, the February Email raises an issue of fact about the "good faith" of SWH. As stated previously, it is not appropriate to weigh the evidence or determine its credibility on a summary judgment motion. Accordingly, SWH's request for summary judgment based upon § 548(c) must be denied.

---

**6.** SWH also argues that summary judgment is appropriate with respect to the Constructive Fraud allegations because the Trustee has not presented any evidence that the Debtor was insolvent at the time of the Transfers. Section 548(a)(1)(B)(ii), however, sets forth three separate elements for the Constructive Fraud test, only one of which must be satisfied to support a finding of constructive fraud. *See* n. 4, *supra*. Here, the evidence presented thus far by the parties suggests a factual issue

regarding whether the Debtor "intended to incur ... debts that would be beyond the debtor's ability to pay as such debts matured" at the time of the Transfers. 11 U.S.C. § 548(a)(1)(B)(ii)(2007).

**7.** 11 U.S.C. § 548(d)(2) provides in pertinent part that "In this section 'value' means ... satisfaction ... of a present or antecedent debt of the debtor...."

## SUMMARY

For the reasons set forth above, the SWH Motion will be denied. An appropriate order follows.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

**AND NOW,** this 21st day of December, 2007, upon consideration of SWH Funding Corporation's Motion to Dismiss, or in the Alternative, for Summary Judgment (docket no. 41) (the "SWH Motion"), and the response thereto, and after oral argument, and for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** and **DECREED** that the SWH Motion is **DENIED.**